## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **SHAKER HEIGHTS TAXPAYERS UNION,** | **Case No. 1:12-cv-1783** |
| **and** | |
| **MARK ZETZER,** | **Judge _____** |
| **Plaintiffs,** | **Magistrate _____** |
| **v.** | |
| **CITY OF SHAKER HEIGHTS, OHIO,** | **VERIFIED COMPLAINT** |
| **and** | |
| **WILLIAM GRUBER, in his official capacity as Interim Director of Law of the City of Shaker Heights, Ohio, and in his personal capacity,** | |
| **Defendants.** | |

Now come Plaintiffs, SHAKER HEIGHTS TAXPAYERS UNION ("SHTU") and MARK ZETZER ("Mr. Zetzer") (collectively, "Plaintiffs"), and for their Complaint against the CITY OF SHAKER HEIGHTS, OHIO (the "City" or "Shaker Heights"), and WILLIAM GRUBER ("Defendant Gruber") (collectively, the "Defendants"), allege as follows:

### INTRODUCTION

1.     This is an action for declaratory judgment, preliminary and permanent injunction, and nominal damages under 42 U.S.C. §1983 and the Lanham Act arising from Defendants' unconstitutional official conduct, policies, practices, regulations, restrictions, threats, intimidation, and/or harassment.

2.      Specifically, Defendants maintain that they may use the Lanham Act to silence Plaintiffs' political speech, and have demanded, under threat of burdensome litigation, that Plaintiffs "cease and desist" from engaging in certain types of political speech that Defendants find objectionable.

3.      Due to Defendants' official and individual conduct, Plaintiffs have suffered and will continue to suffer irreparable harm to their rights under the First Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution.

4.      This harm may only be remedied by a ruling from this Court, and Defendants must be immediately and permanently enjoined from restricting Plaintiffs' protected speech in this manner.

## PARTIES

5.      Plaintiff Shaker Heights Taxpayers Union ("SHTU") is an Ohio unincorporated association that is currently being organized as a non-profit corporation.

6.      STHU is "a non-partisan educational and advocacy group for lower taxes in the residential suburb of Shaker Heights, Ohio."  Its mission is to "lower city property tax and income tax rates to levels below regional averages to retain and attract residents and private investment." It seeks to do this by downsizing city government to the delivery of essential services only, and by ensuring school choice for all parents, rich and poor.

7.      Plaintiff Mark Zetzer is a resident and taxpayer of the City of Shaker Heights and the founder and head of the Shaker Heights Taxpayers Union.

8.      Plaintiffs are concerned that their home of Shaker Heights is the highest taxed district in greater Cleveland, Northeast Ohio, and the State of Ohio.  See http://shakerheights.patch.com/articles/cleveland-magazine-rates-the-suburbs-where-does-

shaker-rank;

http://www.cleveland.com/datacentral/index.ssf/2012/01/property_tax_rates_increase_ac.html;

http://www.cleveland.com/datacentral/index.ssf/2010/03/six_of_the_top_10_school_prope.html

9. Plaintiffs are further concerned that the inclination of their City government, when it desires mores funds, is to raise taxes rather than to work to identify cost-savings.

10. The City of Shaker Heights is a municipal corporation in Cuyahoga County organized under the Constitution and laws of the State of Ohio.

11. The City is a state actor and is a municipal corporation unprotected by sovereign immunity for the purposes of this action.

12. Defendant William Gruber is, and has been at all times relevant to the facts at issue in this case, either the Interim Director of Law or the Director of Law for the City of Shaker Heights, Ohio.

13. The actions of Defendant Gruber described herein were taken pursuant to official conduct on behalf of the City of Shaker Heights, and were exercised under color of law.

14. At all times relevant to the allegations in this Complaint, each and all of the Defendants' acts alleged herein are attributed to Defendant Gruber acting under the color, authority, and pretense of regulations, customs, usages, and policies of the City.

15. Mr. Gruber has and continues to undertake specific action so as to deprive and/or violate the constitutional rights of the Plaintiffs and did so in his individual capacity, as part of his official duties and responsibilities as an employee or agent of the City, and in his official capacity of adopting and implementing a policy, practice or custom of the City.

16.     All actions by the Defendants described herein were undertaken under color of state law which caused the deprivation of Plaintiffs' rights protected by the United States Constitution.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the First and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and injunctive relief and damages; and under 42 U.S.C. § 1988, to award attorneys fees, and under the Lanham Act to secure declaratory relief and an award of attorneys fees.

18.     Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.8, as (i) the Defendants are situated within this judicial district and division; and (ii) all of the claims asserted by Plaintiff arose within this judicial district and division.

## FACTUAL ALLEGATIONS

19.     In April and May of 2012, Plaintiff Mark Zetzer formed the Shaker Heights Taxpayers Union ("SHTU") in response to the City of Shaker Heights' irresponsible tax and spending policies.

20.     Specifically, Mr. Zetzer and SHTU are concerned that, despite having the highest property taxes in greater Cleveland, Northeast Ohio, and the State of Ohio, and despite currently maintaining a 1.75 percent income tax on top of those property taxes, City of Shaker Heights officials voted to initiate a special election for the purpose of increasing the City's municipal income tax from 1.75 percent to 2.25 percent, leaving citizens with among the highest income tax rates in the Cleveland area.

21.      This income tax increase vote will take place at an August 7, 2012 special election ("Issue 1").

22.     Plaintiffs are advocating for a "no" vote on Issue 1, and have printed and distributed, and are continuing to print and distribute, signs, door-hangers, stickers, t-shirts, pamphlets and other materials advocating against the tax increase, and educating voters on why the increase is unnecessary.

23.     Plaintiffs have also established an internet presence for SHTU, where they educate fellow citizens on Shaker Heights' fiscal policy and advocate against the proposed tax increase.

24.     Plaintiffs desire for the SHTU to address City issues related to fiscal policy, election-related and otherwise, well beyond the August 7, 2012 election.  For example STHU is researching whether the tax increase could be repealed, or another tax reduced, if Issue 1 prevails on August 7, 2012.

25.     Plaintiffs are the most prominent, and perhaps the only, organized opposition to the proposed tax increase.

26.     The message that Plaintiffs seek to deliver to the public is that the City of Shaker Heights has acted with fiscal irresponsibility, deferring to tax hikes on the backs of citizens when desirous of more funds, rather than making prudent cuts in government spending.

**Shaker Heights Taxpayers Union Logo**

27.     To make its message as effective as possible, Plaintiffs designed and began use of a logo featuring two green leaves, positioned horizontally, and two green "dollar" or "money" signs, positioned horizontally.  The four figures are arranged in a manner akin to "plus" symbol. See Exhibit A.

28.     This logo is a political parody and satire of the official City of Shaker Heights logo, which features four green leaves, two vertical and two horizontal, arranged akin to a "plus" symbol.  See Exhibit B.

29.     The two "dollar signs" make for a stark and prominent departure from the official city logo, such that Plaintiffs' logo (1) could not possibly be misconstrued as the official city logo; and (2) Plaintiffs' logo is immediately understood to be a parody and satire of the city and its tax and spending policies.

30.     Plaintiffs believe that their logo is the most effective means of communicating their message that the City of Shaker Heights is fiscally irresponsible, and is simply seeking to punish its citizens with additional taxes rather than becoming more fiscally responsible.

31.     Additionally, Plaintiffs believe that the SHTU logo is compelling, convincing, and effective because it "unmasks" the true nature of Shaker Heights taxing authorities.  They believe that while local officials want taxpayers to focus on the benign, leafy-green beauty of Shaker's idyllic suburban streets, with their service mark of four leaves, the reality is that the

cost in taxes of living in the community is prohibitive and injurious, and far in excess for the quality of services these taxes purport to deliver.

32.     Thus, the implicit message of the SHTU logo is that it more accurately represents the principles for which Shaker Heights officials actually stand, i.e., an over-eagerness to impose high taxes, and does so without having to use any printed words.

33.     Plaintiffs' goal is for it to be nearly impossible for a resident to drive through Shaker Heights without seeing the SHTU logo and pondering the implications of the City of Shaker Heights' fiscal policies, until citizens begin to demand changes in fiscal policy.

34.     For these reasons, Plaintiffs would like to use the SHTU logo in as many places, both in print and on the web, as is practically possible.

35.     In its typical usage, the SHTU logo also features the phrase "Shaker Heights Taxpayers Union" immediately next to, above, or below it.

**City official "demand" Plaintiffs "cease and desist" use of SHTU logo**

36.     On May 15, 2012, soon after Mr. Zetzer began using the SHTU logo, Defendant Gruber transmitted a "Demand to Cease and Desist" use of the SHTU logo.

37.     Specifically, Defendant Gruber (1) asserts that the Shaker Heights logo is a trademark registered with the United States Patent and Trademark Office; (2) demands that the SHTU "immediately cease and desist any use, including in the slightly altered form, of the City's logo comprised of the Service Mark of four leaves design"; and (3) threatens that, "[f]ailure to stop such use will result in the City taking legal action to protect its trademark, including a request for an award of damages."  See Exhibit C.

38.     The City's and Defendant Gruber's threats, communications and "Demand to Cease and Desist" come in the midst of a hotly-contested election over whether to increase the

7

rate of municipal income taxation in the City.  City officials support the tax increase, having voted to place it on the ballot, and Plaintiffs are the most prominent voices in opposition to the tax increase.

**Plaintiffs surrender use of the SHTU logo in response to Defendants' threats**

39.     Plaintiffs did not and do not have the financial capacity to defend against costly trademark litigation in federal court, and assumed that the City of Shaker Heights would not mislead them about the viability of its legal claims against them.

40.     For the above reasons, and in response to the Demand to Cease and Desist, and for no other reason, Plaintiffs have, when ordering printed campaign materials, refrained from ordering printed materials featuring the SHTU logo.

41.     Plaintiffs continue to refrain from using the STHU logo, other than on the internet, where Defendants have specifically authorized it.  See Exhibit D.

42.     Plaintiffs' forced discontinuation of the use of the SHTU logo comes in the midst of a hotly-contested election over whether to increase the rate of municipal income taxation in the City.  City officials support the tax increase, having voted to place it on the ballot and Plaintiffs are the most prominent voices in opposition to the tax increase.

**Plaintiffs' attempt to reason with and negotiate with Defendants**

43.     On June 14, 2012, in response to continued difficulties in effectively communicating their message without the SHTU logo, Mr. Zetzer initiated contact with Defendant Gruber, attempting to reach a collaborative solution that would permit SHTU to use its logo.

44.     Specifically, on June 14, 2012, Mr. Zetzer sent an e-mail to Defendant Gruber inquiring whether "it would be possible to continue using the current logo on the Internet and on

printed materials . . . if we included a disclaimer stating that we're not affiliated with the City of Shaker Heights?"  See Exhibit D.

45.    Mr. Zetzer also indicated a willingness to consider any language recommended by Defendant Gruber.  See Exhibit D.

46.    On June 15, 2012, Defendant Gruber rebuked Mr. Zetzer's attempt at negotiation and his suggestion of adding a disclaimer to the SHTU Logo.  See Exhibit D.

47.    In support of the above rebuke, Defendant Gruber's opined that, "[t]he logo will still be prominent on materials and standout, and it would then carry a disclaimer that it is not the City's logo, potentially creating more confusion."  See Exhibit D.

48.    However, Defendant Gruber allowed the SHTU to keep the SHTU Logo on its Facebook page, but not on any printed material.  See Exhibit D.

49.    Perplexed by this response from the City, on the same day, Mr. Zetzer responded back: "I am having trouble understanding: what exactly is your main concern – that citizens will confuse our logo with the Shaker Heights logo, and think we are speaking for the city? Or something else?"    See Exhibit D.

50.    To this, Defendant Gruber responded "[t]hat has been our concern all along—the confusion and dilution of the impact of the logo. The disclaimer idea would not cure that problem for us, and could make it worse." See Exhibit D.

51.    The threatened lawsuit has had a negative effect on the SHTU's message.  The threat of a lawsuit against Mr. Zetzer from the City has resulted in a lessening of the visual impact SHTU's campaign materials have had in representing SHTU's case to the public.

52.    As a result of the City's May 15 "Demand to Cease and Desist," Plaintiffs, against their will, have discontinued use of their highly-effective satirical logo.  The harm of their speech

having been chilled in such a manner is exacerbated by the fact that the threat was made during an election season.  Further, Plaintiffs wish to use the logo as soon as possible, so as to defeat Issue 1, and in future efforts beyond Issue 1.

53.     However, Plaintiffs do not have the funds to defend themselves from the complex litigation the City has threatened them with.  Importantly, the City went out of its way to emphasize the immense economic penalty Mr. Zetzer would face if he continued engaging in his desired political speech, threatening "[f]ailure to stop such use *will* result in the City taking legal action to protect its Trademark, *including a request for an award of damages*."  See Exhibit C (emphasis added).

54.     Defense of a trademark (Lanham Act) action is likely to be costly, and there is no guarantee that attorneys fees would be awarded, even if Plaintiffs were ultimately successful in defending use of the SHTU logo.

55.     Faced with such a Hobbesian choice, Plaintiffs have sacrificed their rights until they can be vindicated in this Court.

**COUNT I**
**DECLARATORY JUDGMENT AND INJUNCTION**
**(28 U.S.C. § 2201, *et seq.*)**

56.     Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

57.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning Plaintiffs' rights under the United States Constitution.  A judicial declaration is necessary and appropriate at this time.

58.     Plaintiffs desire a judicial determination of their rights against Defendants as they pertain to Plaintiffs' right to use the SHTU logo without being subjected to threatened litigation or other harassment or intimidation by the City or its agents.

59.     Plaintiffs are entitled to a declaration that neither the Lanham Act nor any other law, policy, or conduct may prohibit Plaintiffs' use of the SHTU logo.

60.     In order to prevent further violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment be issued, pursuant to the Lanham Act, 28 U.S.C. § 2201, and FED. R. CIV. P. 57, declaring unconstitutional the Defendants' policies and practices and Plaintiffs' use of the SHTU logo valid.

61.     Furthermore, pursuant to 28 U.S.C. § 2202 and FED. R. CIV. P. 65, it is appropriate and hereby requested that this Court issue a temporary restraining order, and preliminary and permanent injunctions prohibiting the Defendants from enforcing their restrictions on Plaintiffs' expressive activities to the extent they are unconstitutional, in order to prevent the ongoing violation of Plaintiffs' constitutional rights.

62.     Specifically, this Court should temporarily restrain and preliminarily and permanently enjoin Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from (1) engaging in any further official conduct that threatens, attempts to threaten, and/or actually interferes with Plaintiffs' protected political speech, including but not limited to use of the Shaker Heights Taxpayers Union satirical logo; and (2) engaging in any further conduct pursuant to the City's position that the Lanham Act applies to political and/or non-commercial speech.

## COUNT II
## VIOLATION OF RIGHT TO FREE SPEECH UNDER
## THE FIRST AND FOURTEENTH AMENDMENTS
## TO THE UNITED STATES CONSTITUTION
## (42 U.S.C. § 1983)

63.     Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

64.     The City's frivolous Demand to Cease and Desist is a clear attempt to use economic coercion to silence political speech with which the City disagrees.  This Demand has silenced Plaintiffs' protected political speech, including their use of the Shaker Heights Taxpayers Union logo, and continues to do so.

### Plaintiffs' Speech is Protected

65.     The First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution protect Plaintiffs' political speech, including their right to use the satirical SHTU logo.

66.      Plaintiffs' political speech criticizing Shaker Heights and its attempted municipal tax increase is at the core of our electoral process and of the First Amendment freedoms – an area of public policy where protection of robust discussion is at its zenith.

67.     Political "[s]peech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." *Citizens United v. FEC,* 130 S.Ct. 876, 898 (2010) (citing *Buckley v. Valeo*, 424 U.S. 1, 14-15 (1976) ("In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential.")).

68.     The First Amendment affords the broadest protection to such political expression in order "to assure (the) unfettered interchange of ideas for the bringing about of political and

social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308 (1957).

69.　"[T]here is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. . . " *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 1437 (1966).

**Defendants' demand that Plaintiffs cease and desist engaging in protected political speech transgressed the First Amendment**

70.　A municipality is liable under § 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018 (1978).

71.　"Municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances." *Pembauer v. Cincinnati*, 475 U.S. 469, 480 (1986).

72.　"It is common knowledge that the First Amendment was adopted against the widespread use of the common law of seditious libel to punish the dissemination of material that is embarrassing to the powers-that-be," and "a State has no more power than the Federal Government to use a civil libel law or any other law to impose damages for merely discussing public affairs and criticizing public officials."　*N.Y. Times Co. v. United States*, 403 U.S. 713, 724, 29 L. Ed. 2d 822, 91 S. Ct. 2140 (1971) (Douglas, J., with whom Black, J., joined, concurring).

73.　Threatened deprivation of constitutional rights that chills speech is a First Amendment harm. *United Food & Commercial Workers Local 1099 v. City of Sidney,* 364 F.3d 738 (6th Cir. 2004).

74.　The Supreme Court has clearly expressed that "the threat of burdensome litigation" can "serve as a deterrent and chill protected political speech." *Fed. Election Comm'n*

*v. Wisc. Right to Life, Inc.* ( WRTL II ), 551 U.S. 449, 464, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007).

75.     Restricting spontaneous political expression places a severe burden on political speech because, as the Supreme Court has observed, "timing is of the essence in politics ... and when an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all."  *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 163, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (Harlan, J., concurring).

76.     A state actor cannot constitutionally condition the receipt of a benefit, such as a liquor license or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, especially one's right to free expression.

77.     The City of Shaker Heights' threat of costly litigation, and offer to abstain from such litigation only if Plaintiffs' sacrificed their clear First Amendment right to political speech, is an actionable cause for redress.

78.     Shaker Heights Taxpayers Union is in a race to convey their message ahead of the August 7 election.  Accordingly, each chilling of speech is magnified, and each threat is a hurdle that is exacerbated when under a deadline.

**Defendants' assertion of trademark infringement is a clearly frivolous pretext for silencing Plaintiffs' Speech**

79.     Trademark Law is governed by the Lanham Act.

80.     Title 15, United States Code. Section 1114 of the Lanham Act forbids a party to "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

14

81.     An injunction under § 1125(c) is proper only to stop "commercial use in commerce of a mark or trade name" if that use causes dilution of a famous mark.

82.     Finally, with respect to § 1125(a), a defendant may be liable only if he has used the plaintiff's mark "in commerce" in a way that either "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person," (§ 1125(a)(1)(A)), or "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" (§ 1125(a)(1)(B)).

83.     Section 1125(c)(4)(B) specifically exempts from the scope of all provisions of § 1125 the "*noncommercial use* of a mark." (Emphasis added).

84.     It is not possible for a person trained in the law to review the Lanham Act and conclude that it applies to Plaintiffs' purely political speech, including the use of the SHTU logo, a modified version of the City of Shaker Heights logo, to criticize the City for its tax and spending policies.

85.     The Sixth Circuit has clearly and unequivocally spoken on this matter:  political speech cannot be regulated by the Lanham Act.

86.     In *Semco, Inc. v. Amcast, Inc*., the court confronted a defendant's argument that his speech was not subject to the Lanham Act because it was not "commercial speech."   In response the Sixth Circuit explicitly concluded that both the United States House of Representatives and Senate had explicitly articulated that the Lanham Act does not apply to political speech.  *Semco, Inc.*, 52 F.3d 108, 111 (6th Cir. 1995).

87.     Further, as one court within the Sixth District recently noted, "[c]ourts additionally have extended protection to unauthorized uses of trademarks for the expressive purposes of comedy, parody, allusion, and so forth, even where the medium of expression is sold for money." *Ford Motor Company v. 2600 Enterprises,* 177 F.Supp.2d 661, 61 U.S.P.Q.2d 1757 (E.D. Mich, 2001).

88.     Defendants' threat of Lanham Act litigation was and is frivolous, and calculated solely to use the threat of litigation in a complex area of law to intimidate Plaintiffs into sacrificing their right to engage in political speech through use of their logo.

89.     Further, defense of a municipal logo from dilution or confusion is not a compelling government interest that warrants curtailment of core political speech.

90.     Further, Defendants conduct is not the least restrictive means of accomplishing its stated interest of preventing confusion surrounding the Shaker Heights logo.

91.     Further, the two logos in dispute are not actually confusing.

92.     Defendants' conduct, together and individually, proximately caused the loss of Plaintiffs' rights to engage in free political speech.

93.     Because Defendants' conduct is calculated solely to suppress speech that they oppose, Defendants' official conduct is not content-neutral.

94.     As a direct result of Defendants' conduct, Plaintiffs have been irreparably injured, and will continue in the future to be irreparably injured, absent a court order preventing such conduct and declaring Plaintiffs free to use the SHTU logo.

95.     As a direct result of Defendants' conduct, Plaintiffs are at continued risk of being unable to fully engage their fellow citizens in discussion and fully advocate on behalf of their political beliefs.

16

96.     As a result of Defendants' official conduct, Plaintiffs are entitled to injunctive relief and nominal damages against all Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and that the Court:

(1) Declare that the Lanham Act does not prohibit Plaintiffs' use of the Shaker Heights Taxpayers Union satirical logo.

(2) Declare that no other law, act, or policy prohibit Plaintiffs' use of the Shaker Heights Taxpayers Union satirical logo.

(3) Temporarily restrain and preliminarily and permanently enjoin Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from (a) engaging in any further official conduct that threatens, attempts to threaten, and/or actually interferes with Plaintiffs' protected political speech, including but not limited to use of the Shaker Heights Taxpayers Union satirical logo; and (b) engaging in any further conduct pursuant to the City's position that the Lanham Act applies to political and/or non-commercial speech.

(4) Award Plaintiffs nominal damages against Defendant Gruber and the City of Shaker Heights;

(5) Pursuant to 42 U.S.C. §1988, the Lanham Act, and other applicable law, award Plaintiffs their costs and expenses incurred in bringing this action, including his reasonable attorneys' fees; and

(6) Grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully submitted,

 /s/ Maurice A. Thompson_____
Maurice A. Thompson (0078548)
          *Lead Counsel for Plaintiffs*
Ryan D. Walters (0076724)
1851 Center for Constitutional Law
208 E. State Street
Columbus, Ohio 43215
Tel: (614) 340-9817
Fax: (614) 365-9564
mthompson@ohioconstitution.org
rwalters@ohioconstitution.org


Sheldon Berns (0000140)
Benjamin J. Ockner (0034404)
Berns, Ockner & Greenberger, LLC
37 Park, Suite 200
3733 Park East Drive
Beachwood, Ohio 44122
Tel: (216) 831-8838, Ext. 205
Fax: (216) 464-4489
SBerns@BernsOckner.com
BOckner@BernsOckner.com