UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SHAKER HEIGHTS TAXPAYERS UNION,** *et al.*, | : : : | Case No. 1:12-cv-1783 |
| | : : | Judge Christopher A. Boyko |
| Plaintiffs, | : : | Magistrate William H. Baughman, Jr. |
| -vs- | : : | |
| **CITY OF SHAKER HEIGHTS, OHIO,** *et al.*, | : : | |
| Defendants. | : : | |

### MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND MEMORANDUM IN SUPPORT THEREOF

The First Amendment affords the broadest protection to political expression in order "to assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people."[1]  And the Supreme Court has clearly expressed that "the threat of burdensome litigation" can "serve as a deterrent and chill protected political speech."[2]

Pursuant to these principles, Plaintiffs Shaker Heights Taxpayers Union ("Shaker Heights Taxpayers Union" or "SHTU") and Mark Zetzer hereby move, pursuant to Federal Rule of Civil Procedure 65(b), for issuance of a temporary restraining order and preliminary injunction enjoining the City of Shaker Heights ("Shaker Heights" or the "City") and its legal counsel from engaging in further official conduct that threatens or interferes with Plaintiffs' protected political speech, or engaging in further conduct pursuant to the City's position that it can use the threat of complex trademark litigation against its citizens to deter them from engaging in political or other *non-commercial* speech.

Through unarguably frivolous threats of costly intellectual property litigation, Defendants have undermined and frustrated, within just a few months of an important special election to increase the municipal income tax,

---

[1] *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957).
[2] *Wisconsin Right to Life*. at 468–70, 127 S.Ct. 2652.

Plaintiffs' efforts to meaningfully exercise their views on the fiscal responsibility and mentality of Shaker Heights' city officials.

If Defendants' conduct prohibiting Plaintiffs from using their organization's logo, so as to fully engage in the exercise of the First Amendment rights, are not immediately enjoined, Plaintiffs will suffer and will continue to suffer irreparable harm for which there is no adequate remedy at law. Pursuant to local rule, this Motion is accompanied by a Memorandum in Support.

Plaintiffs request that the requirement to give security pursuant to Rule 65(c) be waived.

                Respectfully submitted,

                */s/ Maurice A. Thompson*
                Maurice A. Thompson (0078548)
                   *Lead Counsel for Plaintiffs*
                Ryan D. Walters (0076724)
                1851 Center for Constitutional Law
                208 E. State Street
                Columbus, Ohio 43215
                Tel: (614) 340-9817
                Fax: (614) 365-9564
                mthompson@ohioconstitution.org
                rwalters@ohioconstitution.org

                Sheldon Berns (0000140)
                Benjamin Ockner (0034404)
                *Co-counsel for Plaintiffs*
                Berns, Ockner & Greenberger, LLC
                37 Park, Suite 200
                3733 Park East Drive
                Beachwood, Ohio 44122
                Tel: (216) 831-8838
                Fax: (216) 464-4489
                SBerns@BernsOckner.com
                BOckner@BernsOckner.com

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

**I.  INTRODUCTION**

Plaintiffs initiated this civil rights action by filing a Verified Complaint challenging the official conduct, policies, practices, threats and intimidation of the City of Shaker Heights and its key employees, whereby Defendants have unconstitutionally prevented and restrained Shaker Heights Taxpayers Union ("SHTU") and Mr. Zetzer from fully and meaningfully engaging in core political speech with their fellow citizens on tax policy in the midst of an election season.  Through officious-sounding but frivolous threats, intimidation, and coercion, Defendants have stripped Plaintiffs of what Plaintiffs view as their most effective means of concisely communicating the City of Shaker Heights' flawed fiscal policy:   The SHTU logo – an effective parody of the City of Shaker Heights logo.

In determining whether to grant the present motion for issuance of a temporary restraining order and preliminary injunction, the Court is to consider four factors:  (1) whether the movants have a strong likelihood of success on the merits; (2) whether the movants would otherwise suffer irreparable injury; (3) whether the issuance of a temporary restraining order or preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of a temporary restraining order or preliminary injunction.[3]  These factors are to be balanced against one another and should not be considered prerequisites to the granting of a temporary restraining order or preliminary injunction.[4]  As developed below, the balance of interests weigh strongly in favor of the Plaintiffs and the granting of the present motion.

Firstly, Plaintiffs are highly likely to succeed on the merits because Defendants' conduct violates well-established First Amendment and Fourteenth Amendment rights:  Defendants' "Demand to

---

[3]  *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*)(quoting *Sandison v. Michigan High Sch. Athletic Ass'n,* 64 F.3d 1026, 1030 (6th Cir. 1995)); *see also Southwest Williamson County Cmty. Assoc. Inc. v. Slater*, 243 F.3d 270, 277 (6th Cir. 2001).

[4]  *See United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 347 (6th Cir. 1998).

1

Cease and Desist" use of the SHTU logo is entirely without legal basis, since political speech is not subject to trademark law.  This reveals Defendants' conduct to be clearly calculated to silence political speech with which City officials disagree.  Threat of a lawsuit is sufficient official conduct to violate First Amendment rights, and here, Defendants' threats have accomplished exactly that:  Plaintiffs have discontinued use of the SHTU logo solely to avoid the immense expenses associated with intellectual property litigation.

Secondly, Plaintiffs have suffered and will continue to suffer irreparable injury every day in which they are not permitted to engage in core political speech.  This injury is magnified by that fact that it comes as Plaintiffs wish to mount the most effect available methods to combat Defendants' attempt to increase the Shaker Heights municipal income tax on August 7.

Thirdly, the requested injunctive relief would not result in any injury to Defendants or to third parties.  Plaintiffs request only the ability to engage in core protected speech.  The City of Shaker Heights logo is not protected against such speech.  Plaintiffs' logo is sufficiently different that there is no chance of confusion.

Finally, the public interest is clearly in favor of injunctive relief.  As the Supreme Court has made clear in decisions dating back decades, preserving freedom of expression is of particular importance for the health of our democracy. Not only do Plaintiffs believe that permitting their specific expressive activity would benefit the public, but enjoining unconstitutional speech-restrictive policies would maximize political discourse on issues of public concern. Furthermore, it is always in the public interest to prevent the violation of a party's constitutional rights.

**II**.    **BACKGROUND**

To comply with this Court's local rules, Plaintiffs' respectfully direct the Court to Plaintiffs' Verified Complaint, filed on this same day, chronicling Plaintiffs' expressive activity and how Defendants have abridged that expressive activity.  See Plaintiffs' July 12, 2012 Verified Complaint.

### III. LAW AND ARGUMENT

Mr. Zetzer and the Shaker Heights Taxpayers Union satisfy the elements necessary for issuance of a temporary restraining order and/or preliminary injunction enjoining the City of Shaker Heights and its legal counsel from engaging in further official conduct that threatens or interferes with Plaintiffs' protected political speech, or engaging in further conduct pursuant to the City's position that it can use the threat of complex trademark litigation against its citizens to deter them from engaging in political or other *non-commercial* speech.

#### A. Plaintiffs are likely to succeed on the merits.

Plaintiffs are highly likely to succeed on the merits because Defendants' conduct clearly violates well-established constitutional principles. The First Amendment to the Constitution provides that "Congress shall make no law ... abridging the freedom of speech, ... or the right of the people ... to petition the Government for a redress of grievances." The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people."[5] "The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment."[6]

Following the Supreme Court's guidance in *Cornelius v. NAACP Legal Defense & Educ., Fund, Inc.*,[7] free speech claims are analyzed in three steps:

> First, we must decide whether [the speech at issue] is protected under the First Amendment. Second, we must identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic. Last, we must determine if the [Government's] reasons for prohibiting [the speech at issue] satisfy the appropriate standard.[8]

---

[5] *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957)
[6] *Id.,* at 101-102, 60 S.Ct., at 744.
[7] 473 U.S. 788, 797 (1985).
[8] *Parks v. City of Columbus*, 395 F.3d 643, 647 (6th Cir. 2005) (internal citations and quotations omitted).

Here, Plaintiffs' speech is clearly protected political speech, as discussed below. Next, no forum analysis is necessary, because Defendants' have prohibited Plaintiffs' speech in all forums. Finally, as to the appropriate standard, when a law burdens core political speech, courts apply strict scrutiny, under which "the Government must prove that [the restriction on speech] furthers a compelling interest related to the process of governing."[9] Further, absolute prohibitions on a particular type of expression, such as here, also must be narrowly drawn to accomplish a compelling governmental interest.[10] But first Plaintiffs must establish that Defendant' official conduct injured their rights.

  i. *Plaintiffs' speech has been restricted by Defendants' official conduct.*

As an initial matter, there can be no doubt that Defendants have restricted Plaintiffs' speech: Shaker Heights "demand" that Plaintiffs "cease and desist" engaging in protected political speech, at peril of enduring costly intellectual property litigation, and Plaintiffs' suppression of their own speech in response, is more than sufficient to suffice as an injury to Plaintiffs' rights. The Supreme Court holds that "[g]enerally speaking, government action which chills constitutionally protected speech or expression contravenes the First Amendment,"[11] and "[t]he threat of sanctions may deter [the exercise of First Amendment freedoms] almost as potently as the actual application of sanctions."[12] And the Sixth Circuit's understanding that "the harassment necessary to rise to a level sufficient to deter an individual is 'not extreme.'"[13]

---

[9] *Fed. Election Comm'n v. Wisc. Right to Life, Inc. ( WRTL II ), 551 U.S. 449, 464, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007)*; see also *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) (when law burdens core political speech, a court will "uphold the restriction only if it is narrowly tailored to serve an overriding state interest").

[10] *United States v. Grace,* 461 U.S. 171, 177 (1983) (citations omitted) (quoting *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983)).

[11] *Riley v. National Federation of the Blind of North Carolina*, 487 U.S. 781, 794, 101 L. Ed. 2d 669, 108 S. Ct. 2667 (1988); *Gehl Group v. Koby*, 63 F.3d 1528, 1534 (10th Cir. 1995) ("[i]n the context of a government prosecution, a decision to prosecute which is motivated by a desire to discourage protected speech or expression violates the First Amendment and is actionable under § 1983.")

[12] *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963)

[13] *See Siggers-El v. Barlow,* 412 F.3d 693, 701 (6th Cir. 2005) (remarking that because "there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable").

Meanwhile, a municipality is liable under § 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort."[14] A single act is sufficient to constitute official municipal policy: "municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances."[15] Such a circumstance is present where "the decision-maker possesses final authority to establish municipal policy with respect to the action ordered."[16] Put another way, "if the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood."[17] Thus Defendants "demand to cease and desist" is official City policy.

Further, federal courts hold that threats of litigation and demands to cease and desist are official policies that can deprive a citizen of his constitutional rights. The Supreme Court has clearly expressed that "the threat of burdensome litigation" can "serve as a deterrent and chill protected political speech."[18] Further, In *Beedle v. Wilson*, the Tenth Circuit explained "[b]ecause the Hospital here is akin to a municipality, we must determine whether the Hospital's decision to sue Mr. Beedle for libel constituted an official policy or custom."[19] There, the Court concluded that the institution of a libel action was indeed an official policy giving rise to "a colorable claim" under Section 1983.[20] This principle was perhaps best articulated in *N.Y. Times Co. v. United States*: "It is common knowledge that

---

[14] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986), the Supreme Court further developed the rule expressed in *Monell*, stating "the 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479.
[15] *Pembaur,* supra, at 480.
[16] *Id.* at 481.
[17] *Id.*
[18] *Wisconsin right to Life.* at 468–70, 127 S.Ct. 2652.
[19] *Beedle v. Wilson,* 422 F.3d 1059 (10th Cir. 2005).
[20] Id.

* * * a State has no more power than the Federal Government to use a civil libel law <u>or any other law to impose damages for merely discussing public affairs and criticizing public officials.</u>"[21]

Perhaps as importantly to this Court, in *G&V Lounge, v. Michigan Liquor Control Commission,* the Sixth Circuit specifically analyzed the Plaintiff's First Amendment action in response to a city attorney's threat of litigation:

> The city's attorney wrote a letter to Plaintiff stating in pertinent part that: "* * * "in conclusion, if you proceed with your stated intentions of offering any adult-type entertainment at the aforestated location, the City of Inkster will take any and all necessary legal measures to prevent this from occuring [sic]."[22]

Specifically, the Plaintiff alleged, *inter alia,* "the City of Inkster, violated Plaintiff 's First Amendment rights when it *threatened* to seek revocation of Plaintiff 's liquor license and entertainment permit if Plaintiff presented topless dancing at the bar."[23] Further, the plaintiffs there alleged that *they deliberately refrained from advancing protected expressive activity solely because of the city attorney's threats*.[24] In response, the Sixth Circuit observed "<u>the threat to take away Plaintiff's license or permit has already chilled Plaintiff from presenting a First Amendment protected activity to the public. This is also a distinct and palpable injury in fact, and is actual rather than merely imminent. It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact.</u>"[25]

Moreover, as the *G&V Lounge* court observed, the lower court's holding of the threat as non-actionable under the First Amendment "flatly contradict[ed] well established Supreme Court precedent to the effect that a state actor cannot constitutionally condition the receipt of a benefit, such as a liquor

---

[21] *N.Y. Times Co. v. United States*, 403 U.S. 713, 724, 29 L. Ed. 2d 822, 91 S. Ct. 2140 (1971) (Douglas, J., with whom Black, J., joined, concurring)

[22] *G&V Lounge, v. Michigan Liquor Control Commission,* 23 F.3d 1071 (6th Cir. 1994). See also *All Children Matter, Inc. v. Brunner* Not Reported in F.Supp.2d, 2011 WL 665356 (S.D. Ohio 2011).

[23] Id.

[24] Id.

[25] Id., at 1038, citing *See, e.g., Levin v. Harleston,* 966 F.2d 85, 89–90 (2d Cir.1992) (holding that a merely implicit threat to fire a professor for his controversial views chilled professor's First Amendment rights sufficiently to confer standing); *Doe v. University of Michigan,* 721 F.Supp. 852 (E.D.Mich.1989) ("It is not necessary ... that an individual first be exposed to prosecution in order to have standing to challenge a statute which is claimed to deter the exercise of constitutional rights."). *Accord NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963) ("The threat of sanctions may deter [the exercise of First Amendment freedoms] almost as potently as the actual application of sanctions.").

license or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, especially one's right to free expression."[26] Thus, under applicable Supreme Court and Sixth Circuit precedent, the City of Shaker Heights threat of costly litigation, and offer to abstain from such litigation only if Plaintiffs' sacrificed their clear First Amendment right to political speech, is sufficient official conduct to (1) impair Plaintiffs' First Amendment rights; and (2) trigger municipal liability.

### ii. *Plaintiffs' political expression critical of government, in response to and in advocacy against a ballot issue to increase the rate of taxation, is protected speech.*

*In the free society ordained by our Constitution it is not the government, but the people individually as citizens and candidates and collectively as associations and political committees who must retain control over the quantity and range of debate on public issues in a political campaign.*[27]

Plaintiffs' SHTU logo, as political speech criticizing Shaker Heights and its attempted municipal tax increase, is protected political expression because it "is at the core of our electoral process and of the First Amendment freedoms – an area of public policy where protection of robust discussion is at its zenith."[28] Political "[s]peech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people."[29] Although First Amendment protections are not confined to "the exposition of ideas,"[30] "there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. . . "[31] This no more than reflects our "profound national commitment to the principle that debate on public issues should be uninhibited,

---

[26] Id., citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."); *Keyishian v. Board of Regents,* 385 U.S. 589, 606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967) (quoting *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963)) ("It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege.").
[27] *Buckley v. Valeo* (1976), 424 U.S. 1, at 57, 96 S.Ct. 612.
[28] *Id.* at 425. (citation and internal quotation marks omitted).
[29] *Citizens United,* 130 S.Ct. at 898 (citing Buckley, 424 U.S. at 14–15, 96 S.Ct. 612 ("In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential.")).
[30] *Winters v. New York*, 333 U.S. 507, 510, 68 S.Ct. 665, 667, 92 L.Ed. 840 (1948).
[31] *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 1437, 16 L.Ed.2d 484 (1966).

robust, and wide-open,"[32] As the Supreme Court observed in *Monitor Patriot Co. v. Roy*,[33] "it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns." Given its design to critique City of Shaker Heights' public policy, the SHTU logo is clearly a form of political expression.

Further, political parody is protected speech. As one court within the Sixth District recently noted, "Courts additionally have extended protection to unauthorized uses of trademarks for the expressive purposes of comedy, parody, allusion, and so forth, even where the medium of expression is sold for money."[34] Criticism of a product likewise warrants exemption from the anti-dilution law.[35]

A parody "depends on a lack of confusion to make its point," and "'must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is not the original and is instead a parody.'"[36] Plaintiffs' SHTU logo is clearly a parody of the Shaker Heights logo: it substitutes two of the four characters in the logo, replacing two leaves with two dollar signs. No person reasonable person could mistake the SHTU logo for the official City of Shaker Heights logo. However, simultaneously, the similarity of the arrangement and remainder of two leaves makes it clear that the logo is intended build upon the City of Shaker Heights logo as its point of departure – replacing the leaves with dollar signs is the very thing that alerts the viewer to the fact that a political message related to Shaker Heights is being advanced. When placed next to the name "Shaker Heights Taxpayers Union," the nature of the parody becomes even more clear.

---

[32] *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).
[33] *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971).
[34] *Ford Motor Company v. 2600 Enterprises,* 177 F.Supp.2d 661, 61 U.S.P.Q.2d 1757 (E.D. Mich, 2001), citing, *e.g., Mattel, Inc. v. MCA Records,* No. CV *665 97–6791 WMB, 1998 WL 422641, *14–15 (C.D.Cal. Feb. 18, 1998); *see also Charles Atlas, Ltd. v. DC Comics, Inc.,* 112 F.Supp.2d 330, 338–39 (S.D.N.Y.2000).
[35] *See, e.g., Northland Ins. Cos. v. Blaylock,* 115 F.Supp.2d 1108, 1122–23 (D.Minn.2000) (upholding defendant's use of "northlandinsurance.com" to criticize plaintiff Northland Insurance Companies as noncommercial speech).
[36] *Hormel Food Corp. v. Jim Henson Productions. Inc.,* 73 F.3d 497, 503 (2d Cir.1996)(internal citations omitted).

Finally, spontaneous election-related expressions are protected. Courts acknowledge that political speech is entitled to its greatest protection during elections, where time is of the essence: Issue 1 appears on the August 7, 2012 ballot, and thus, much like a candidate campaign, every day counts. In *Arizona Right to Life PAC v. Bayless,*[37] the Ninth Circuit struck a regulation barring a Political Action Committee from distributing literature without first enduring a 24-hour notification period.[38] The court explained "significantly, the statute is aimed at political speech, which is at the heart of our democratic process and 'operates at the core of the First Amendment.'"[39] Thus, "to suggest that the waiting period is minimal ignores the reality of breakneck political campaigning and the importance of getting the message out in a timely, or, in some cases, even instantaneous fashion."[40] Indeed, "timing is of the essence in politics ... and when an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all."[41] The same rationales apply here: Shaker Heights Taxpayers Union is in a race to convey their message ahead of the August 7 election. Accordingly, each day their expression is chilled is magnified, and each notification period is a hurdle that is exacerbated when under a deadline.

### iii. Defendants' restrictions on Plaintiffs' political speech are not narrowly-tailored to serve any compelling interest.

#### a. Defendants' assertion of trademark infringement is clearly frivolous, and thus not a compelling justification for suppressing Plaintiffs' speech.

Trademark restrictions clearly do not apply to political speech such as the SHTU logo, rendering Defendants' interest in defending their trademark as a pretext for silencing Plaintiffs' speech, rather than

---

[37]  320 F.3d 1002 (9th Cir. 2003) (Notice requirement prior to PAC engaging in political speech is an unconstitutional prior restraint)

[38]  Id.

[39]  Id. *Mills v. Alabama,* 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs."). The First Amendment reflects a "'profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open.'" *Boos,* 485 U.S. at 318, 108 S.Ct. 1157.

[40]  Id.

[41]  *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 163, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (Harlan, J., concurring);

9

a compelling state interest. Trademark Law is governed by the Lanham Act. Title 15, United States Code. Section 1114 of the Lanham Act forbids a party to *"use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

An injunction under § 1125(c) is proper only to stop "commercial use in commerce of a mark or trade name" if that use causes dilution of a famous mark. (Emphasis added). Finally, with respect to § 1125(a), a defendant may be liable only if he has used the plaintiff's mark "in commerce" in a way that either "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,"[42] or "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."[43]

Section 1125(c)(3)(C) specifically exempts from the scope of all provisions of § 1125 the "*noncommercial use* of a mark." It would be quite literally impossible to review the Lanham Act and conclude that it applies to Plaintiffs' purely political speech - - the use of the Shaker Heights Taxpayers Union logo, a modified version of the City of Shaker Heights logo, to criticize the City for its tax and spending policies.

It would be equally impossible to draw such a conclusion after reviewing applicable precedent. The Sixth Circuit has clearly and unequivocally spoken on this matter: political speech cannot be regulated by the Lanham Act. First, in *Semco, Inc. v. Amcast, Inc.*, the Court confronted a defendant's argument that his speech was not subject to the Lanham Act because it was not "commercial speech."

---

[42] § 1125(a)(1)(A). (Emphasis added).
[43] § 1125(a)(1)(B). (Emphasis added).

10

In response the Sixth Circuit explicitly concluded that both the United States House of Representatives and Senate had explicitly articulated that the Lanham Act does not apply to political speech.[44]

After noting that the Lanham Act does not define the "critical phrase" of "commercial advertising or promotion," the Court explained that legislative history of the Trademark Law Revision Act indicates that the House of Representatives and the Senate interpreted the phrase differently, but both sought to prohibit application of United States Trademark Law to political speech:

> The House apparently intended to limit the application of the Lanham Act strictly to "commercial speech," as that phrase has been defined in the constitutional jurisprudence of the Supreme Court. "Commercial speech" receives much narrower First Amendment protection than other speech, and the Constitution does not protect deceptive or misleading commercial speech. The House, by so restricting the section, intended to guarantee the constitutionality of the Lanham Act.[45]
>
> ***
>
> [T]he word "commercial" is intended only to eliminate any possibility that the section might be applied to political speech. Although the Senate sees this language as unnecessary because section 43(a) requires that the misrepresentations be made with respect to goods or services, we consider inclusion of the language so long as Congress' intent that it be interpreted only as excluding political speech is clear. It is also Congress' intent that the "commercial" language be applicable any time there is a misrepresentation relating to goods or services.[46]

The Court continued in its analysis *only* "[s]ince the article written by Amcast's president is not political."[47]

Later, in *Taubman Company v. Webfeats*, the Sixth Circuit analyzed a case where defendant asserted that "regardless of whether his use of Taubman's marks violates the Lanham Act, any injunction prohibiting his use violates the Constitution as a prior restraint on his First Amendment right of Free Speech."[48]  In response, the Sixth Circuit comprehensively addressed the matter, noting "we will first explain the interrelation between the First Amendment and the Lanham Act."

---

[44] Id.
[45] *Semco, Inc. v. Amcast, Inc.*, 52 F.3d 108, at 111 (6th Cir. 1995), citing 134 Cong.Rec. S 16973 (daily ed. October 20, 1988) (Sen. DeConcini).
[46] Semco, supra, at 111-112, citing
[47] Id.
[48] *Taubman Company v. Webfeats*, 319 F.3d 770 (6th Cir. 2003).

11

First, the Court noted that "[t]he Lanham Act is constitutional because it only regulates commercial speech, which is entitled to reduced protections under the First Amendment."[49] "Hence, as per the language of the Lanham Act, any expression embodying the use of a mark not 'in connection with the sale ... or advertising of any goods or services," and not likely to cause confusion, is outside the jurisdiction of the Lanham Act and necessarily protected by the First Amendment."[50]

The Court concluded "we find no use 'in connection with the advertising' of goods and services to enjoin, and the Lanham Act cannot be properly invoked," and "[the Defendant's] use of Taubman's mark in the domain name 'taubmansucks.com' is purely an exhibition of Free Speech, and the Lanham Act is not invoked. And although economic damage might be an intended effect of Mishkoff's expression, the First Amendment protects critical commentary when there is no confusion as to source, even when it involves the criticism of a business. Such use is not subject to scrutiny under the Lanham Act."[51]

Further, as one court within the Sixth District recently noted, "Courts additionally have extended protection to unauthorized uses of trademarks for the expressive purposes of comedy, parody, allusion, and so forth, even where the medium of expression is sold for money."[52] Meanwhile, another federal court within the Sixth Circuit has added that "the Sixth Circuit has determined that internet "gripe sites" such as the one he created-which are noncommercial and which implement plainly derogatory terms in the domain name-do not violate the Lanham Act."[53]

---

[49] *Id.; see also* Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. 557, 563, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (stating that regulation of commercial speech is subject only to intermediate scrutiny).

[50] Id.

[51] Id. (Emphasis added).

[52] *Ford Motor Company v. 2600 Enterprises,* 177 F.Supp.2d 661, 61 U.S.P.Q.2d 1757 (E.D. Mich, 2001), citing, *e.g., Mattel, Inc. v. MCA Records,* No. CV *665 97–6791 WMB, 1998 WL 422641, *14–15 (C.D.Cal. Feb. 18, 1998); *see also Charles Atlas, Ltd. v. DC Comics, Inc.,* 112 F.Supp.2d 330, 338–39 (S.D.N.Y.2000). Criticism of a product likewise warrants exemption from the anti-dilution law. *See, e.g., Northland Ins. Cos. v. Blaylock,* 115 F.Supp.2d 1108, 1122–23 (D.Minn.2000) (upholding defendant's use of "northlandinsurance.com" to criticize plaintiff Northland Insurance Companies as noncommercial speech).

[53] *Taylor Building Corp. of America v. Benfield*, 507 F.Supp.2d 832 (S.D. Ohio, 2007).

All of this precedent is readily available. Defendants, in their eagerness to suppress Plaintiffs' speech, either ignored it or buried their heads in the sand. In either event, because Defendants are clearly not entitled to protect their trademark against political speech, their interest in doing so is not a compelling state interest. Consequently, this Court must enjoin Defendants' suppression of the SHTU logo.

> **b. Even if avoidance of confusion were a compelling interest, the SHTU logo is not Shaker Heights' trademark.**

Even if the City of Shaker Heights had a compelling interest in paternalistically protecting society from general confusion regarding the two logos (and it does not), no such confusion is possible here: the two logos do not sufficiently represent each other to create confusion. In identifying a compelling interest, which "confusion" alone is not, Defendants must do more than "assert[] interests [that] are important in the abstract."[54] Courts do not recognize an interest as significant if it is merely "conjectural" rather than "real."[55] Thus, there is no government interest, much less a substantial or compelling one, in deterring the *potentiality* of confusion of the two logos. Indeed, the Supreme Court has noted that "undifferentiated fear or apprehension of a disturbance is not enough to overcome the right to freedom of expression."[56]

> **c. Even if Defendants maintained a compelling interest in suppressing Plaintiffs' logo, their restrictions are not narrowly tailored.**

Even if either protecting its trademark or avoiding confusion were a compelling interest, Defendants' refusal to consider a curative disclaimer, or provide its own clarification, renders their restriction not narrowly-tailored. To be narrowly tailored, a regulation must not "burden substantially more speech than is necessary to further the government's legitimate interests."[57] A "[policy] is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to

---

[54] *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994).
[55] *Id.*
[56] *Tinker v. Des Moines Indep. Cmty Sch. Dist,* 393 U.S. 503, 508 (1969).
[57] *Id.* at 799.

13

remedy."[58] Here, On June 14, Mr. Zetzer emailed Mr. Gruber, requesting the right to continue to use the SHTU logo along with a prominent disclaimer that would allay any concern over confusion. However, the City rejected this offer in its entirety. In doing so, Defendants' have rejected the opportunity to restrict Plaintiffs' speech in a more narrowly-tailored manner, and ignored the rationale that just as "the usual cure for false speech is more speech,"[59] the cure for confusing speech is more speech.

### B. Plaintiffs are confronted with irreparable injury.

Even a temporary deprivation of First Amendment freedom of expression rights is generally sufficient to prove irreparable harm.[60] Thus, satisfaction of the first prong of the preliminary injunction standard – demonstrating a strong likelihood of success on the merits – also satisfies the irreparable injury standard.[61] Plaintiffs have demonstrated a substantial likelihood of success on the merits. Thus, Plaintiffs will suffer irreparable injury if Defendants are not immediately enjoined from pursuit of their unconstitutional suppression of Plaintiffs' speech.

Further, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[62] Finally, and perhaps most importantly to Plaintiffs, with a tax election just one month away, Plaintiffs are unable to fully and effectively engage with their fellow citizens, through their message of choice, at this most critical time.

### C. **No public interest is served by continued threats, intimidation, and harassment against Plaintiffs, nor would be private harm accrue.**

---

[58] *Frisby v. Schultz*, 487 U.S. 474, 485 (1988).
[59] *Kleiner v. First Nat. Bank of Atlanta,* 751 F.2d 1193, 1206 n. 27 (11th Cir.1985). *Cf.* *580 *Whitney v. California,* 274 U.S. 357, 377, 47 S.Ct. 641, 649, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring).
[60] *National People's Action v. Village of Wilmette*, 914 F.2d 1008, 1012 (7th Cir. 1990).
[61] *See Elrod v. Burns*, 427 U.S. 347, 373 (1973) (holding that if a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated).
[62] Id., *see also Newsom v. Norris,* 888 F.2d 371, 378 (6th Cir.1989) ("The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.") (citing *Elrod* ); *id.* ("[V]iolations of first amendment rights constitute*1079 per se irreparable injury.") (quoting *Cate v. Oldham,* 707 F.2d 1176, 1188 (11th Cir.1983); *Johnson v. Bergland,* 586 F.2d 993, 995 (4th Cir.1978)).

Neither Defendants nor others will suffer any harm if they are enjoined from enforcing this unconstitutional policy against Plaintiffs. There is no reason to believe that City operations would be threatened. And the unconstitutional character of this threat leaves no legitimate interest in its continued application. On the other hand, the public interest is served by protecting free expression, maximizing political activity, striking down policies that chill speech, and by vindicating Plaintiffs' constitutional rights.[63]

Preliminary Injunction prohibiting Defendants from (1) engaging in any further restriction or regulation of or intimidation, threat, and/or harassment in connection with Mr. Zetzer and the Shaker Heights Taxpayer Union's use of the SHTU logo; (2) any official conduct consistent with a policy, pattern, or practice reflecting the position that the City of Shaker Heights can regulate or restrict core political speech through use of the Lanham Act or any other intellectual property enactments.

### III. CONCLUSION

For the foregoing reasons, this Court must at once enjoin the City of Shaker Heights and its legal counsel from instituting threats, intimidation, and retaliation in response to Plaintiffs' legitimate exercise of their constitutional rights through use of the SHTU logo and otherwise.

| | Respectfully submitted, |
|---|---|
| Sheldon Berns (0000140) <br> Benjamin Ockner (0034404) <br> *Co-counsel for Plaintiffs* <br> Berns, Ockner & Greenberger, LLC <br> 37 Park, Suite 200 <br> 3733 Park East Drive <br> Beachwood, Ohio 44122 <br> Tel: (216) 831-8838 <br> Fax: (216) 464-4489 <br> SBerns@BernsOckner.com <br> BOckner@BernsOckner.com | */s/ Maurice A. Thompson*_____ <br> Maurice A. Thompson (0078548) <br> *Lead Counsel for Plaintiffs* <br> Ryan D. Walters (0076724) <br> 1851 Center for Constitutional Law <br> 208 E. State Street <br> Columbus, Ohio 43215 <br> Tel: (614) 340-9817 <br> Fax: (614) 365-9564 <br> mthompson@ohioconstitution.org <br> rwalters@ohioconstitution.org |

---

[63] *See G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("it is always in the public interest to prevent the violation of a party's constitutional rights").

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing motion and memorandum in support, as well as the verified complaint filed in this action, will be served upon the following via e-mail on the date of filing:

William Gruber
Director of Law
City of Shaker Heights, Ohio
william.gruber@shakeronline.com

                                             */s/ Ryan D. Walters*
                                             Ryan D. Walters (0076724)