UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHAKER HEIGHTS TAXPAYERS UNION, *et al.*, | : Case No. 12-CV-01783 |
| Plaintiffs, | : Judge Boyko |
| v. | : |
| CITY OF SHAKER HEIGHTS, OHIO, *et al.*, | : PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON REMAINING ISSUES |
| Defendants. | : |

Plaintiffs Shaker Heights Taxpayers Union and Mark Zetzer (collectively, "Plaintiffs") hereby move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for the entry of summary judgment in their favor and against Defendants City of Shaker Heights and William Gruber (collectively, "Defendants"), holding that Plaintiffs are entitled to nominal damages and, as prevailing parties, attorneys' fees and costs, in addition to the Consent Permanent Injunction Order entered on July 24, 2012 (Doc. 11-1). No genuine dispute exists as to any material fact and Plaintiffs are entitled to judgment as a matter of law. In support hereof, Plaintiffs tender the following Memorandum in Support.

MEMORANDUM IN SUPPORT

I.   FACTUAL BACKGROUND AND SUMMARY JUDGMENT EVIDENCE

In this civil rights action, Plaintiffs have challenged the official conduct, policies, practices and actions of the City of Shaker Heights ("the City") and its officials in silencing Plaintiffs' core political speech, including threatening Plaintiffs with burdensome litigation, should the Plaintiffs continue to engage in such core political speech that the City found objectionable.

The only evidence necessary for Plaintiffs to prevail on summary judgment is already before this Court: the Verified Complaint of Plaintiff Mark Zetzer, which serves as his affidavit

for summary judgment purposes. The facts articulated in that Complaint are also fully articulated in Plaintiffs' Motion for Temporary Restraining Order and Permanent Injunction, and Plaintiffs respectfully incorporate those facts herein.

In response to those facts and incontrovertible law, this Court, on July 25, 2012, issued the Consent Permanent Injunction Order providing that "Defendants shall take no action which interferes in any way with the Plaintiff's noncommercial use of the [SHTU] Logo irrespective of whether or not there is text that accompanies the [SHTU] Logo." (Doc. No 12, at 1.) The Court recognized that the remaining issues for adjudication were the Plaintiffs' entitlement to both nominal damages and an award of attorney fees and costs pursuant to 42 U.S.C.§ 1988. (Doc. No 12, at 2 ("Plaintiffs' additional claims, including those related to nominal damages and attorneys' fees shall be decided by the Court in accordance with the schedule and procedure established".) Thus, the present Motion for Summary Judgment is tendered to address those remaining issues.

## II. LAW AND ARGUMENT

### A. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court should view the evidence, including all reasonable inferences, in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 907 (6th Cir. 2001). "If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the

Court should enter summary judgment" in favor of the moving party. *Bozung v. Rawson*, 439 Fed. App'x 513, 519 (6th Cir. 2011); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Upon a full assessment of the summary judgment evidence and the law, Plaintiffs are entitled to summary judgment in their favor as to Defendants' liability for nominal damages for the past deprivation of their constitutional rights and for attorneys' fees and costs pursuant to 42 U.S.C. § 1988, the amount of which should be determined at a hearing pursuant to a schedule and procedure as the Court directs.

### B. As a remedy for the past violations of Plaintiffs' First Amendment rights, Plaintiffs are entitled to an award of nominal damages.

In *Carey v. Piphus*, 435 U.S. 247 (1978), the Supreme Court held that plaintiffs in a civil rights action were entitled to nominal damages for the deprivation of their due process rights even *without* proof of actual injury. The Court explained that "[b]y making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed." *Id.* at 266.

However, Plaintiffs here have been actually injured by Defendants conduct.

### i. Plaintiffs' speech has been unconstitutionally restricted by Defendants' official conduct.

As an initial matter, there can be no doubt that Defendants have unconstitutionally restricted Plaintiffs' speech:  Shaker Heights' "demand" that Plaintiffs "cease and desist" engaging in protected political speech, at peril of enduring costly intellectual property litigation, and Plaintiffs' suppression of their own speech in response, is more than sufficient to suffice as an injury to Plaintiffs' rights.  The Supreme Court holds that "[g]enerally speaking, government action which chills constitutionally protected speech or expression contravenes the First

3

Amendment,"[1] and "[t]he threat of sanctions may deter [the exercise of First Amendment freedoms] almost as potently as the actual application of sanctions."[2] The Sixth Circuit, moreover, has held that "the harassment necessary to rise to a level sufficient to deter an individual is 'not extreme.'"[3]

Meanwhile, a municipality is liable under §1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort."[4] A single act is sufficient to constitute official municipal policy: "municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances."[5] Such a circumstance is present where "the decision-maker possesses final authority to establish municipal policy with respect to the action ordered."[6] Put another way, "if the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood."[7] Thus Defendants' "demand to cease and desist" is official City policy.

Further, federal courts hold that threats of litigation and demands to cease and desist are

---

[1] *Riley v. National Federation of the Blind of North Carolina*, 487 U.S. 781, 794, 101 L. Ed. 2d 669, 108 S. Ct. 2667 (1988); *Gehl Group v. Koby*, 63 F.3d 1528, 1534 (10th Cir. 1995); *See also Gehl*, 63 F.3d at 1534-35 ("[i]n the context of a government prosecution, a decision to prosecute which is motivated by a desire to discourage protected speech or expression violates the First Amendment and is actionable under § 1983.")

[2] *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963)

[3] *See Siggers-El v. Barlow,* 412 F.3d 693, 701 (6th Cir. 2005) (remarking that because "there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable").

[4] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986), the Supreme Court further developed the rule expressed in *Monell*, stating "the 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479.

[5] *Pembaur,* supra, at 480.

[6] *Id.* at 481.

[7] *Id.*

official policies that can deprive a citizen of his constitutional rights. The Supreme Court has clearly expressed that "the threat of burdensome litigation" can "serve as a deterrent and chill protected political speech."[8] Further, In *Beedle v. Wilson*, the Tenth Circuit explained "[b]ecause the Hospital here is akin to a municipality, we must determine whether the Hospital's decision to sue Mr. Beedle for libel constituted an official policy or custom."[9] There, the Court concluded that the institution of a libel action was indeed an official policy giving rise to "a colorable claim" under Section 1983.[10] This principle was perhaps best articulated in *N.Y. Times Co. v. United States*: "It is common knowledge that * * * a State has no more power than the Federal Government to use a civil libel law or any other law to impose damages for merely discussing public affairs and criticizing public officials."[11]

Perhaps as importantly to this Court, in *G&V Lounge, v. Michigan Liquor Control Commission,* the Sixth Circuit specifically analyzed the Plaintiff's First Amendment action in response to a city attorney's threat of litigation:

> The city's attorney wrote a letter to Plaintiff stating in pertinent part that: "* * * "in conclusion, if you proceed with your stated intentions of offering any adult-type entertainment at the aforestated location, the City of Inkster will take any and all necessary legal measures to prevent this from occuring [sic]."[12]

Specifically, the Plaintiff alleged, *inter alia,* "the City of Inkster, violated Plaintiff's First Amendment rights when it *threatened* to seek revocation of Plaintiff's liquor license and

---

[8] *Wisconsin right to Life.* at 468–70, 127 S.Ct. 2652.
[9] *Beedle v. Wilson,* 422 F.3d 1059 (10th Cir. 2005).
[10] *Id.*
[11] *N.Y. Times Co. v. United States*, 403 U.S. 713, 724, 29 L. Ed. 2d 822, 91 S. Ct. 2140 (1971) (Douglas, J., with whom Black, J., joined, concurring) (emphasis added).
[12] *G&V Lounge, v. Michigan Liquor Control Commission,* 23 F.3d 1071 (6th Cir. 1994). See also *All Children Matter, Inc. v. Brunner* Not Reported in F.Supp.2d, 2011 WL 665356 (S.D.Ohio,2011).

5

entertainment permit if Plaintiff presented topless dancing at the bar."[13] Further, the plaintiffs there alleged that *they deliberately refrained from advancing protected expressive activity solely because of the city attorney's threats*.[14] In response, the Sixth Circuit observed "the threat to take away Plaintiff's license or permit has already chilled Plaintiff from presenting a First Amendment protected activity to the public. This is also a distinct and palpable injury in fact, and is actual rather than merely imminent. It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact."[15]

Moreover, as the *G&V Lounge* court observed, the lower court's holding of the threat as non-actionable under the First Amendment **"flatly contradict[ed] well established Supreme Court** precedent to the effect that a state actor cannot constitutionally condition the receipt of a benefit, such as a liquor license or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, especially one's right to free expression."[16] Thus, under applicable Supreme Court and Sixth Circuit precedent, the City of Shaker Heights threat of costly litigation,

---

[13] *Id.*
[14] *Id.*
[15] *Id.* at 1038 (emphasis added), *citing See, e.g., Levin v. Harleston,* 966 F.2d 85, 89–90 (2d Cir.1992) (holding that a merely implicit threat to fire a professor for his controversial views chilled professor's First Amendment rights sufficiently to confer standing); *Doe v. University of Michigan,* 721 F.Supp. 852 (E.D.Mich.1989) ("It is not necessary ... that an individual first be exposed to prosecution in order to have standing to challenge a statute which is claimed to deter the exercise of constitutional rights."). *Accord NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963) ("The threat of sanctions may deter [the exercise of First Amendment freedoms] almost as potently as the actual application of sanctions.").
[16] *Id.*, citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."); *Keyishian v. Board of Regents,* 385 U.S. 589, 606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967) (quoting *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963)) ("It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege.").

and offer to abstain from such litigation only if Plaintiffs' sacrificed their clear First Amendment right to political speech, is sufficient official conduct to (1) impair Plaintiffs' First Amendment rights; and (2) trigger municipal liability for damages.

### ii. The Effect of Shaker Heights' Official Conduct was to silence Plaintiffs' Political Speech.

As a result of Defendants' May 15 "Demand to Cease and Desist," Plaintiffs, against their will, have, other than on the web, discontinued use of their highly-effective satirical SHTU logo. Verified Complaint at ¶ 51-52. The harm of their speech having been chilled in such a manner is exacerbated by the fact that the threat was made during an election season. *Id.*

Further, Plaintiffs hoped to use the SHTU logo as soon as possible, so as to defeat Issue 1, and in future efforts beyond Issue 1, but refrained due to the threat. Verified Complaint at ¶ 39-55. Plaintiffs did not have the funds to defend themselves from the complex litigation the City of Shaker Heights has threatened. *Id.* And importantly, the City went out of its way to emphasize the immense economic penalty Plaintiffs would face if they continued engaging in their desired political speech, threatening "[f]ailure to stop such use will result in the City taking legal action to protect its Trademark, including a request for an award of damages." Verified Complaint at ¶ 37. Indeed, intellectual property litigation is undoubtedly very expensive. Meanwhile, as opposed to a large corporation with a logo that translates into perhaps millions of dollars in revenue, Plaintiffs as a small and loosely-organized grass-roots group of concerned citizens, did not have the economic incentives to spend tens of thousands of dollars protecting their logo, no matter how effective it may be. In the absence of relief from this Court, governmental units could use such threats to accomplish that which they could not accomplish in the courtroom – just as Defendants have done here: Defendants' threat presented Mr. Zetzer and

SHTU members with a stark choice between their First Amendment rights and their financial stability, and unsurprisingly, Plaintiffs were forced to sacrifice the former to preserve the latter.

### iii. Defendants' restrictions on Plaintiffs' political speech were not narrowly-tailored to serve any compelling interest.

Trademark restrictions clearly do not apply to political speech such as the SHTU logo, rendering Defendants' interest in defending their trademark as a pretext for silencing Plaintiffs' speech, rather than a compelling state interest. Trademark Law is governed by the Lanham Act. Title 15, United States Code. Section 1114 of the Lanham Act forbids a party to "<u>use in commerce</u> any reproduction, counterfeit, copy, or colorable imitation of a registered mark <u>in connection with the sale, offering for sale, distribution, or advertising of any goods or services</u> on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." (Emphasis added.)

An injunction under § 1125(c) is proper only to stop "<u>commercial use in commerce</u> of a mark or trade name" if that use causes dilution of a famous mark. (Emphasis added). Finally, with respect to § 1125(a), a defendant may be liable only if he has used the plaintiff's mark "<u>in commerce</u>" in a way that either "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her <u>goods, services, or commercial activities</u> by another person,"[17] or "<u>in commercial advertising or promotion</u>, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's <u>goods, services, or commercial activities</u>."[18]

---

17 § 1125(a)(1)(A). (Emphasis added).
18 § 1125(a)(1)(B). (Emphasis added).

8

Section 1125(c)(4)(B) specifically exempts from the scope of <u>all provisions of § 1125 the "*noncommercial use* of a mark.*"*</u>  (Emphasis added.)  It would be quite literally impossible to review the Lanham Act and conclude that it applies to Plaintiffs' purely political speech - - the use of the Shaker Heights Taxpayers Union logo, a modified version of the City of Shaker Heights logo, to criticize the City for its tax and spending policies.

It would be equally impossible to draw such a conclusion after reviewing applicable precedent.  The Sixth Circuit has clearly and unequivocally spoken on this matter:  political speech cannot be regulated by the Lanham Act.  First, in *Semco, Inc. v. Amcast, Inc.*,[19] the Court confronted a defendant's argument that his speech was not subject to the Lanham Act because it was not "commercial speech."  In response the Sixth Circuit explicitly concluded that both the United States House of Representatives and Senate had explicitly articulated that the Lanham Act does not apply to political speech.[20]

After noting that the Lanham Act does not define the "critical phrase" of "commercial advertising or promotion," the Court explained that legislative history of the Trademark Law Revision Act indicates that the House of Representatives and the Senate interpreted the phrase differently, but both sought to prohibit application of United States Trademark Law to political speech:

> <u>The House apparently intended to limit the application of the Lanham Act strictly to "commercial speech," as that phrase has been defined in the constitutional jurisprudence of the Supreme Court.</u>  "Commercial speech" receives much narrower First Amendment protection than other speech, and the Constitution does not protect deceptive or misleading commercial speech.  <u>The House, by so restricting the section, intended to guarantee the constitutionality of the Lanham Act.</u>[21]

---

19    52 F.3d 108 (6th Cir. 1995).
20    52 F.3d at 111.
21    *Id.* (emphasis added), citing 134 Cong. Rec. H 10420 (daily ed. October 19, 1988) (Rep. Kastenmeier).

9

> \*\*\*
> <u>[T]he word "commercial" is intended only to eliminate any possibility that the section might be applied to political speech.</u> Although the Senate sees this language as unnecessary because section 43(a) requires that the misrepresentations be made with respect to goods or services, <u>we consider inclusion of the language so long as Congress' intent that it be interpreted only as excluding political speech is clear. It is also Congress' intent that the "commercial" language be applicable any time there is a misrepresentation relating to goods or services</u>.[22]

The Court continued in its analysis *only* "[s]ince the article written by Amcast's president is not political."[23] Later, in *Taubman Company v. Webfeats*, the Sixth Circuit analyzed a case where defendant asserted that "regardless of whether his use of Taubman's marks violates the Lanham Act, any injunction prohibiting his use violates the Constitution as a prior restraint on his First Amendment right of Free Speech."[24] In response, the Sixth Circuit comprehensively addressed the matter, noting "we will first explain the interrelation between the First Amendment and the Lanham Act."

First, the Court noted that "<u>[t]he Lanham Act is constitutional because it only regulates commercial speech</u>, which is entitled to reduced protections under the First Amendment."[25] "Hence, as per the language of the Lanham Act, <u>any expression embodying the use of a mark not 'in connection with the sale ... or advertising of any goods or services,"</u> and not likely to cause confusion<u>, is outside the jurisdiction of the Lanham Act and necessarily protected by the First Amendment</u>."[26]

---

[22] *Id.* at 111-112 (emphasis added), citing 134 Cong.Rec. S 16973 (daily ed. October 20, 1988) (Sen. DeConcini).
[23] *Id.*
[24] *Taubman Company v. Webfeats*, 319 F.3d 770 (6th Cir., 2003).
[25] *Id.* (emphasis added); *see also Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 563, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (stating that regulation of commercial speech is subject only to intermediate scrutiny).
[26] *Id.* (emphasis added).

10

The Court concluded "we find no use 'in connection with the advertising' of goods and services to enjoin, and the Lanham Act cannot be properly invoked," and "[the Defendant's] use of Taubman's mark in the domain name 'taubmansucks.com' is purely an exhibition of Free Speech, and the Lanham Act is not invoked. And although economic damage might be an intended effect of Mishkoff's expression, <u>the First Amendment protects critical commentary when there is no confusion as to source, even when it involves the criticism of a business. Such use is not subject to scrutiny under the Lanham Act</u>."[27]

Further, as one court within the Sixth District recently noted, "Courts additionally have extended protection to unauthorized uses of trademarks for the expressive purposes of comedy, <u>parody</u>, allusion, and so forth, even where the medium of expression is sold for money."[28] Meanwhile, another federal court within the Sixth Circuit has added that "the Sixth Circuit has determined that internet "gripe sites" such as the one he created-which are noncommercial and which implement plainly derogatory terms in the domain name-do not violate the Lanham Act."[29]

In suppressing Plaintiffs' speech, Defendants ignored this precedent. Defendants clearly were not entitled to protect their trademark against political speech, so their interest in doing so was not a compelling state interest. Consequently, Defendants are liable to Plaintiffs for the injury Defendants caused to Plaintiffs' First Amendment rights.

---

[27] *Id.* (emphasis added).

[28] *Ford Motor Company v. 2600 Enterprises,* 177 F.Supp.2d 661, 61 U.S.P.Q.2d 1757 (E.D. Mich, 2001), citing, *e.g., Mattel, Inc. v. MCA Records,* No. CV *665 97–6791 WMB, 1998 WL 422641, *14–15 (C.D.Cal. Feb. 18, 1998); *see also Charles Atlas, Ltd. v. DC Comics, Inc.,* 112 F.Supp.2d 330, 338–39 (S.D.N.Y.2000). Criticism of a product likewise warrants exemption from the anti-dilution law. *See, e.g., Northland Ins. Cos. v. Blaylock,* 115 F.Supp.2d 1108, 1122–23 (D.Minn.2000) (upholding defendant's use of "northlandinsurance.com" to criticize plaintiff Northland Insurance Companies as noncommercial speech).

[29] *Taylor Building Corp. of America v. Benfield*, 507 F.Supp.2d 832 (S.D. Ohio, 2007).

11

### C. Plaintiffs are prevailing parties and therefore are entitled to attorney's fees.

42 U.S.C. § 1988(b) provides that a "court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." "Although the language of section 1988 is permissive, the court must exercise its discretion consistent with the congressional purpose underlying this statute. In enacting the Civil Rights Attorney's Fees Awards Act of 1976, Congress intended for prevailing parties to ordinarily recover attorneys fees. Congress expressly stated that the prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Price v. Pelka*, 690 F.2d 98, 101 (6th Cir. 1982) (quoting S. Rep. No. 94-1011, 94th Cong., 2d Sess. 4, reprinted in 1976 U.S.C.C.A.N. 5908, 5912); *accord Blanchard v. Bergeron*, 489 U.S. 87, 89 (1989).

"The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Id.* at 95 (quoting H.R. Rep. No. 94-1558, at 1 (1976)). "[Fee] awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Riverside v. Rivera*, 477 U.S. 561, 577-578 (U.S. 1986). "If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Id.*; *see also Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982) ("[t]he function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel").

In this case, there are no special or extraordinary circumstances that would militate against an award of attorney fees and, in fact, such an award would be consistent with the

12

congressional purpose underlying section 1988. Thus, the remaining issue is whether Plaintiffs are considered to be prevailing parties.

"[A] party is the prevailing party where (1) it receives 'at least some relief on the merits of [its] claim,' and (2) there is a 'judicially sanctioned change in the legal relationship of the parties.'" *Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 679 F.3d 410, 425 (6th Cir. 2012) (quoting *Buckhannon Board and Care Home v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 603 & 605 (2001). "After a district court determines that a plaintiff is a prevailing party under Sec. 1988, it must then determine what is a 'reasonable' attorney's fee." *Cramblit v. Fikse*, 33 F.3d 633, 635 (6th Cir. 1994).[30]

In this case, Plaintiffs received "at least some relief on the merits of [its] claim." Specifically, as a result of this action, Plaintiffs have established their legal right and authority, free from threats and intimidation from the City, to utilize the SHTU Logo in the course of engaging in core political speech. And such relief was afforded through a judicially sanctioned change in the legal relationship between the parties.

A litigant who obtains a preliminary injunction may qualify as a prevailing party, "if the injunction represents an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities favors the plaintiff." *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753 (6th Cir. 2002). In this case, Plaintiffs didn't obtain a preliminary injunction but, instead, permanent relief in the form of the Consent Permanent Injunction. For on July 25, 2012, the Court issued the Permanent Injunction which specifically provided and decreed that "Defendants shall take no action which interferes in any

---

[30] With respect to the present motion, Plaintiffs simply seek a determination that they are entitled to nominal damages and that they are prevailing parties under Section 1988 for which they are entitled to their attorneys' fees and costs in an amount to be determined pursuant to a schedule and procedures as the Court directs.

13

way with the Plaintiffs' noncommercial use of the Logo irrespective of whether or not there is text that accompanies the Logo."

Additionally, "a plaintiff who wins only nominal damages is considered a 'prevailing party' for purposes of § 1988." *Pouillon v. Little*, 326 F.3d 713, 716 (6th Cir. 2003). Thus, pursuant to the request herein for an award of nominal damages, upon granting such relief, a second basis exists to find the Plaintiffs to be prevailing parties and entitled to an award of attorney fees pursuant to 42 U.S.C. § 1988.

## III.  CONCLUSION

As established by the summary judgment evidence, as well as the law, Defendants violated the constitutional rights of Plaintiffs through the adoption of an unconstitutional policy prohibiting Plaintiffs' exercise of their First Amendment rights. As a result of the foregoing, Plaintiffs are entitled to summary judgment awarding them nominal damages and holding that, as prevailing parties, they are also entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988 in an amount to be determined pursuant to a schedule and procedures as the Court directs.

Respectfully submitted,

*/s/ Maurice A. Thompson*
Maurice A. Thompson (0078548)
*Lead Counsel for Plaintiffs*
Ryan D. Walters (0076724)
1851 Center for Constitutional Law
208 E. State Street
Columbus, Ohio 43215
Tel: (614) 340-9817
Fax: (614) 365-9564
mthompson@ohioconstitution.org
rwalters@ohioconstitution.org

/s/ *Benjamin J. Ockner*
Sheldon Berns (0000140)
Benjamin Ockner (0034404)
Berns, Ockner & Greenberger, LLC
3733 Park East Drive, Suite 200
Beachwood, Ohio 44122
Tel: (216) 831-8838, Ext. 205
Fax: (216) 464-4489
sberns@bernsockner.com
bockner@bernsockner.com

Christopher P. Finney (0038998)
Finney, Stagnaro, Saba & Patterson Co., LPA
2623 Erie Avenue
Cincinnati, Ohio 45208
Tel: (513) 533-2980
Fax: (513) 533-2990
cfinney@fssp-law.com

**CERTIFICATION**

Pursuant to Local Rule 7.1(f), I, Benjamin J. Ockner, certify that the foregoing Memorandum complies with the 20 page limitation for a dispositive motion set forth in Local Rule 7.1(f) for a standard track.

/s/ Benjamin J. Ockner
Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 29th day of August, 2012, a copy of the foregoing Plaintiffs' Motion For Summary Judgment On Remaining Issues was filed electronically. Notice of this filing will be sent to counsel for Defendants City of Shaker Heights and William M. Ondrey Gruber via the Court's CM/ECF system. Parties may access this filing through the Court's system.

/s/ Benjamin J. Ockner
Counsel for Plaintiffs